■ In the Matter of JOSEPH YY., Respondent, v TERRI YY., Appellant. (And Another Related Proceeding.) [905 NYS2d 352]—

Egan Jr., J. Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered April 1, 2009, which, among other things, dismissed respondent's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two daughters born in 1997 and 2001, and have been involved in ongoing and acrimonious custody and visitation disputes since the parties' separation in 2006. In April 2006, Family Court granted a temporary order of joint custody, with the mother having primary physical custody and the father having certain parenting time as supervised by the mother. In May 2006, due to the mother's allegations that the father was harassing her during his parenting time, Family Court directed that the father's visitation be conducted under the auspices of the Law, Order and Justice Center. Petitions were thereafter filed by both parties—the father alleging that the mother failed to comply with visitation as ordered and the mother alleging that she was physically unable to remove the children from the car as they did not want to see their father. The record does indeed reflect that the children have been consistently unwelcoming and even hostile toward the father during supervised visitation.

To aid in the resolution of these ongoing visitation disputes, in August 2006, Family Court directed that the parties undergo a psychological evaluation, which was conducted by David Horenstein. During this evaluation, the mother reported that she believed the father to be a pedophile, that the younger child disclosed to her a questionable incident in which the father touched her on her "tickle spot" between her legs, and that her now adult child from a previous relationship disclosed that, when she was 12 or 13 years old, the father requested that she remove her clothes. During this evaluation, the older child denied that the father ever touched her on this "tickle spot." Horenstein noted that the children's accountings of their father's alleged inappropriate behavior seemed to be verbatim with reports made by the mother, and he opined, among other things, that the children displayed "classical evidence of having been alienated from their father" as a result of the influence of the mother.

In November 2006, the parties entered into an order on consent, which granted the parties joint custody, granted the mother physical custody and granted the father supervised visitation at the Law, Order and Justice Center. Thereafter, between January and June 2007, a number of petitions were filed by both parties alleging violations of the visitation requirements set forth in the November 2006 custody order and also seeking modification of that order. In June 2007, during the midst of these ongoing disputes, the older child disclosed an incident of sexual abuse by the father that was alleged to have occurred in 2004—when she was seven years old. The allegations were investigated criminally, but charges were not pursued. The Department of Social Services deemed the allegations unfounded. Meanwhile, Family Court ordered a second psychological evaluation of the parties, which was conducted by Paul Partridge. During this second evaluation, the older child did not disclose any allegations of sexual abuse, but the younger child disclosed, among other things, that the father "used to touch our tickle spots when he was driving." Partridge noted that "[t]he recent allegation by [the older child] that she was sexually abused is apparently in the process of investigation . . . Of course, it goes without saying that if the allegations are true that this would and should result in dire consequences for the custody and visitation arrangements for [the father]." Partridge opined that, even if the allegations of sexual abuse are determined to be unfounded, there was little hope for establishing an appropriate father-child relationship outside of therapeutic visitation.

Notwithstanding the allegations of sexual abuse, in January 2008, the parties agreed in open court to an order, which was entered as an amended order in February 2008 and which continued joint legal custody of the children, with primary physical custody to the mother and, among other things, ordered therapeutic visitation between the father and the children "under the auspices of Union Street Counseling Services" (hereinafter USC). Within days after consenting to this order, the mother brought the children to Aaron Hoorwitz for a sexual abuse evaluation. In March 2008, the father filed a petition alleging that the mother violated the February 2008 order by failing to comply with the directive for therapeutic visitation. In April 2008, based on Hoorwitz's findings that he was "inclined to believe" that the older child had been sexually abused and that continued forced visitation with the father would be harmful, the mother filed a petition seeking the elimination of the father's supervised therapeutic visitation until the children "can be further evaluated and treated for sexual trauma." After

a trial which took place over seven days between July 2008 and January 2009 and at which numerous witnesses testified, including competing expert psychologists and other mental health professionals, Family Court dismissed the mother's petition, finding that she failed to establish the requisite change in circumstances.* Family Court further granted the father's petition, finding the mother in willful violation of the February 2008 order. The mother now appeals.

Modification of an established custody arrangement requires a showing, by a preponderance of the evidence (*see Matter of Cobane v Cobane*, 57 AD3d 1320, 1321-1322 [2008], *lv denied* 12 NY3d 706 [2009]), that there is a sufficient change in circumstances requiring such a modification "in order to insure the continued best interest of the child" (*Matter of Rue v Carpenter*, 69 AD3d 1238, 1239 [2010] [internal quotation marks and citation omitted]; *see Matter of Bronson v Bronson*, 63 AD3d 1205, 1206 [2009]). The primary consideration in any custody matter is the best interests of the children (*see Matter of Karpensky v Karpensky*, 235 AD2d 594, 595 [1997]). "Because sexual abuse of a child . . . constitutes a sufficient change of circumstances to warrant alteration of an existing custody arrangement, Family Court's focus on this pivotal issue was warranted" (*id.* at 595 [internal quotation marks and citations omitted]; *see Matter of Laurie II. v Raymond JJ.*, 68 AD3d 1170, 1171 [2009]; *Matter of Gary J. v Colleen L.*, 288 AD2d 720, 722 [2001]). At issue in this case is whether, in according deference to Family Court's findings and credibility determinations, there is a sound and substantial basis in the record for its determination that the mother failed to establish a sufficient change in circumstances to warrant modification of the February 2008 custody order (*see Matter of Eck v Eck*, 57 AD3d 1243, 1244 [2008]; *Matter of Gary J. v Colleen L.*, 288 AD2d at 722; *Matter of Bennett v Davis*, 277 AD2d 517, 518 [2000]; *Matter of Daniel R. v Noel R.*, 195 AD2d 704, 706 [1993]).

Upon our review of the record, we find no reason to disturb Family Court's determination. We note that there was insufficient evidence of sexual abuse to prosecute the father criminally, and the allegations were deemed unfounded by the Department of Social Services. The older child's revelations of sexual abuse were made during tumultuous ongoing visitation disputes, after having previously denied any abuse. We note that the expert evaluations conducted at the direction of Family Court were conducted with the benefit of having interviewed

---

* Family Court found that it "cannot conclude that sexual abuse did not occur, only that it appears unlikely."

both parties and the children, while the opinions of the expert retained by the mother and the other mental health professionals who testified on the mother's behalf were based on evaluations without having any input from the father. There was expert testimony that the mother had a clear agenda to make sure the children had no access to their father, and that the children were influenced by this agenda. There was also expert testimony that the allegations of sexual abuse were suspicious based on the timing of the disclosure and the demeanor of the children. To the extent that the parties presented conflicting expert and other testimony, including the testimony of the mother's adult child, we note that it was Family Court that observed the testimony and demeanor of these witnesses and found that sexual abuse appeared unlikely. Also implicit in Family Court's determination is a finding that the mother had failed to demonstrate that therapeutic visitation with the father would be detrimental to the children. According Family Court deference to make factual and credibility determinations, we find its decision to have a sound and substantial basis and decline to disturb it (see *Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1131, 1133 [2010], *lv dismissed and denied* 14 NY3d 912 [2010]; *Matter of Richardson v Alling*, 69 AD3d 1062, 1064 [2010]; *Matter of Krywanczyk v Krywanczyk*, 236 AD2d 746, 747 [1997]; *Matter of Daniel R. v Noel R.*, 195 AD2d at 706-707).

We are also not persuaded that Family Court erred in finding that the mother willfully violated Family Court's February 2008 order. "To sustain a civil contempt finding based upon the violation of a court order, it must be established that there was a lawful court order in effect that clearly expressed an unequivocal mandate, that the person who allegedly violated the order had actual knowledge of its terms, and that his or her actions or failure to act defeated, impaired, impeded or prejudiced a right of the moving party. The violation must be established by clear and convincing evidence" (*Matter of Aurelia v Aurelia*, 56 AD3d 963, 964 [2008] [citations omitted]). Here, the mother's testimony established that she was aware that the father was to have therapeutic visitation with the children under the auspices of USC. The mother acknowledged that after being present in court and agreeing to this visitation, USC contacted her to arrange for such counseling, but that she declined to schedule the same and, instead, without notice to the father or Family Court, retained a psychologist to evaluate the children for sexual abuse. This constituted a violation of the February 2008 custody order, and we decline to disturb Family Court's determination that such violation was willful (see *Matter of Cobane v Cobane*, 57 AD3d at 1322-1323; *Matter of Blaize F.*, 48 AD3d 1007, 1008-1009 [2008]).

Rose, J.P., Lahtinen, Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.